UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTINE CRAWFORD,

                          Plaintiff,

          -against-                                    1:14-CV-1336 (LEK/CFH)

UNITED STATES OF AMERICA, *et al.*,

                          Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

This case—brought by Plaintiff Christine Crawford against Defendants the United States

of America and the Albany County Chapter of NYSARC, Inc.—stems from an alleged slip and

fall that occurred in the parking lot of the Leo W. O'Brien Federal Building in downtown

Albany. Dkt. No. 1 ("Complaint") ¶¶ 1, 32. Crawford's claims against the United States are

brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. Currently

before the Court is the United States' Motion for Summary Judgment, Dkt. No. 63 ("U.S.

Motion"); see also Dkt. Nos. 63-1 ("U.S. Memorandum"), 32-2 ("U.S. Statement of Material

Facts"), 66 ("U.S. Opposition"), 67 ("NYSARC Response to Statement of Material Facts"), 76

("U.S. Reply"), 78 ("Plaintiff's Response to Statement of Material Facts"), and NYSARC's

Motion for Summary Judgment, Dkt. No. 69 ("NYSARC Motion"); see also Dkt. Nos. 69-4

("NYSARC Memorandum"), 69-5 ("NYSARC Statement of Material Facts"), 77 ("NYSARC

Opposition"). For the following reasons, the United States' Motion is granted and NYSARC's

Motion is denied.

## II.    BACKGROUND

### A.  The O'Brien Building

The O'Brien Building is a ten-story high rise located in downtown Albany, New York. Pl.'s Resp. SMF ¶ 43. Primarily at issue in this case is the building's parking lot, which is located directly to the north of the building and spans between North Pearl Street and Broadway. Id. ¶¶ 44–45. The General Services Administration ("GSA"), a federal agency, owns and manages the building. U.S. Mem. at 7; see also Pl.'s Resp. SMF ¶ 48 (discussing the GSA's contracting for janitorial services).

While GSA acted as the building manager, it contracted out the building's janitorial services to NYSARC. Pl.'s Resp. SMF ¶ 48. Although the contract relevant to this case was signed in 2010, NYSARC and its staff have been performing janitorial services at the O'Brien Building for at least twenty-nine years. Id. ¶¶ 48, 58. As part of its janitorial duties, NYSARC was tasked with removing snow and ice from the parking lot and other exterior areas of the O'Brien Building. Id. ¶¶ 51–52; Dkt. No. 63-16 ("Exhibit L") at 38–39. GSA did, however, retain the ability to order additional snow and ice removal outside of normal building hours, to approve chemicals used for deicing, and to determine the type and duration of certain services that are diverted to make way for additional snow and ice removal during inclement weather. Ex. L at 38–39; see also Pl.'s Resp. SMF ¶¶ 51–52 (arguing that "the United States retained supervisory control" over NYSARC's snow and ice removal work).

 Crawford argues that, outside of the contract, "GSA specifically detailed how they required the Albany NYSARC to perform the snow removal from the parking lot, where to place the snow and when and where to remove the snow." Pl.'s Resp. SMF ¶ 59. In support of this,

Crawford cites the deposition transcript of Jose Reyes, an NYSARC employee. Dkt. No. 63-15 ("Exhibit K"). Reyes testified that the general instruction concerning snow removal—unchanged in his twenty-nine years of employment there—was to push the snow from one side of the lot to North Pearl Street and Wilson Street, and to pick up and dump the snow from the other side of the lot into the grass between the lot and the sidewalk adjacent to Broadway. Id. at 28:2–30:1; accord Pl.'s Resp. SMF ¶¶ 60–62.

## B. The Incident

The claims in this case relate to a slip and fall that Crawford suffered in the parking lot of the O'Brien Building on January 13, 2014. Pl.'s Resp. SMF ¶¶ 1, 19–34. Crawford—then thirty-five years old—was a legal assistant at the law firm of Featherson, Wiley & Clyne, LLP. Id. ¶ 3. While not herself a federal employee, Crawford would come to the O'Brien Building each morning to drop off her son at a (perhaps Orwellian-named) daycare facility there called "Club Fed." Id. ¶¶ 1, 4–9, 12.[1] The parking lot where the incident occurred is immediately adjacent to the O'Brien Building, id. ¶ 7, and when dropping off her son at Club Fed, Crawford would temporarily park in one of several spots in the lot that were designated for parents dropping off or picking up their kids, id. ¶ 8.

On the morning of January 13, 2014, Crawford entered the O'Brien Building parking lot as usual, and "did not notice anything unusual about its condition." Id. ¶¶ 19–20. After exiting the car, she gathered a diaper bag and her son from the car and began walking toward the building. Id. ¶¶ 23–26. As she walked, Crawford's "feet slipped out from under her," causing her

---

[1] "Club Fed" is normally a pejorative term for minimum security federal prison facilities. See, e.g., Helena Andrews-Dyer & Emily Heil, What It's Really Like Inside 'Club Fed' Prisons, Wash. Post, Jan. 5, 2015.

to fall and "fracture . . . the radial head of her right elbow." <u>Id.</u> ¶¶ 32, 35. After she fell and while on the ground, Crawford "noticed the presence of 'black ice'" on the parking lot. <u>Id.</u> ¶ 33.

The parties dispute Crawford's attention level as she navigated the parking lot, as well as the suitability of her footwear for an Albany winter, in an attempt by Defendants to show that Crawford's own negligence was the cause of the fall. U.S. Mem. at 24–25; NYSARC Mem. at 6–7. In support of this theory, the Government points to portions of Crawford's deposition testimony that, under the Government's view, show she "wasn't even paying attention" to the parking lot's condition and that she was not looking at the ground and instead was "just in [her] zone rushing" into the building. Pl.'s Resp. SMF ¶¶ 25, 30. Additionally, the Government claims that Crawford "was not wearing winter boots" and instead "was wearing ankle boots . . . that had a heel a couple of inches tall," though Crawford contests these characterizations of her shoes. <u>Id.</u> ¶¶ 27–28.

## C.  The Summary Judgment Motions

At a January 15, 2016 telephone conference, Magistrate Judge Christian F. Hummel extended and set the deadline for dispositive motions for March 25, 2016. Jan. 15, 2016 Minute Entry;[2] <u>see also</u> Dkt. No. 62 (ordering the telephone conference). The United States complied with this deadline by filing a motion for summary judgment on March 25. U.S. Mot. In support of its motion, the Government argues that (1) because the clearing of ice and snow was delegated to NYSARC—an independent contractor—the United States cannot be held liable under the FTCA, (2) the Government's decision to delegate this responsibility to NYSARC is protected

---

[2]  This minute entry was not assigned a docket number, but appears on the docket sheet immediately following Docket Number 62.

under the discretionary function exception to the FTCA, and (3) the sole proximate cause of Crawford's fall was her own negligence. U.S. Mem. at 16–25. Along with its brief and exhibits, the Government also filed a statement of material facts pursuant to Local Rule 7.1(a)(3). U.S. SMF. When the Government's motion was filed, a response deadline was set for April 19, 2016. Docket.

On April 19, Crawford filed her opposition to the Government's summary judgment motion. U.S. Opp'n. In that brief, Crawford argues that (1) the degree of control exercised by the Government over NYSARC in its clearing of the ice and snow from the O'Brien Building parking lot renders NYSARC a government employee, and not an independent contractor, (2) the method of snow removal and other issues related to this litigation are not subject to the discretionary function exception, and (3) Crawford's behavior was not the sole proximate cause of the accident. Id. at 8–12. Crawford did not file a response to the Government's statement of material facts along with her opposition brief, as is required by Local Rule 7.1(a)(3). Docket.

Also on April 19—over three weeks after the motion deadline—NYSARC filed what it styled a "cross motion for summary judgment," NYSARC Mot., along with a statement of material facts, NYSARC SMF. As Crawford points out, however, Dkt. No. 72 ("Letter Motion to Strike"), there is nothing "cross" about this motion at all: the motion requests that the Court grant NYSARC summary judgment against Crawford (not the United States) and "dismiss[] [her] Complaint in its entirety," NYSARC Mot.; accord NYSARC Mem.[3] In the motion, NYSARC

---

[3] While the Court denied Crawford's Letter Motion to Strike and ordered briefing on the merits, Dkt. No. 75, the timeliness of the NYSARC Motion is of course relevant—in addition to and independent of its merits—in determining whether to grant the motion, see, e.g., Starr Int'l Co. v. Am. Int'l Grp., Inc., No. 05-CV-6283, 2009 WL 614752, at *1 (S.D.N.Y. Mar. 4, 2009) (noting the untimely filing of a summary judgment motion after the magistrate's dispositive

argues that (1) it is entitled to summary judgment based on its expert's opinion that, despite Crawford's testimony, there could not have been snow or ice present when she slipped and fell in the parking lot, NYSARC Mem. at 2–3, (2) even if there was snow or ice, "NYSARC undertook reasonable and diligent care in its snow removal efforts, id. at 3–5, and (3) Crawford's own negligence was the sole proximate cause of her fall, id. at 6–7.

On May 3, Crawford filed her opposition to the NYSARC Motion. NYSARC Opp'n. On the same day, Crawford also filed a response to the Government's original statement of material facts, two weeks after the opposition deadline and just over a week after the Government filed its reply. Pl.'s Resp. SMF. Crawford never filed a response to NYSARC's statement of material facts. Docket.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

---

motion deadline as grounds for its denial); Doe v. British Univs. N. Am. Club, 788 F. Supp. 1286, 1297 (D. Conn. 1992) (denying a summary judgment motion as untimely "regardless of the merits" when filed after the deadline set by the court's scheduling order).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir.1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.  DISCUSSION

### A.  The Government's Motion

#### 1.  Timeliness of Crawford's Statement of Material Facts

The Local Rules of the Northern District of New York establish an additional filing requirement for summary judgment motions: the statement of material facts. L.R. 7.1(a)(3). By requiring moving parties to specifically list the undisputed facts they rely on in support of their

motion, the rule aims "'to force litigants to focus sharply on the specific factual issues in dispute,' and to enable the Court to 'move immediately to the gravamen of the case.'" <u>Osier v. Broome County</u>, 47 F. Supp. 2d 311, 317 (N.D.N.Y. 1999) (quoting <u>Riley v. Town of Bethlehem</u>, 5 F. Supp. 2d 92, 94 (N.D.N.Y. 1998)).[4] Rule 7.1(a)(3) also states that each "opposing party shall file a response to the [movant's] Statement of Material Facts . . . admitting and/or denying each of the movant's assertions in matching numbered paragraphs." "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." L.R. 7.1(a)(3) (emphasis omitted).

Rule 7.1(b) is also relevant to this case, as it both sets the time for a party to file its opposition papers and establishes the consequence for failing to meet this deadline. As stated by the rule, "[t]he Court shall not consider any papers required under this Rule that are not timely filed . . . unless good cause is shown." L.R. 7.1(b)(3). Thus, when combined with Rule 7.1(a)(3), the failure to file a response to the moving party's statement of material facts by the opposition deadline may result in any properly supported facts in that statement being deemed admitted for the purposes of the motion.

In this case, Crawford failed to timely file her response to the Government's statement of material facts, only doing so after the Government pointed out this failure in its reply brief. U.S. Reply at 2–4.[5] She also provided no reason at all for the delay in this filing. Because of this, the

---

[4] All of the other federal courts in New York have a similar requirement. S.D.N.Y. & E.D.N.Y. L.R. 56.1; W.D.N.Y. L.R. 56(a).

[5] In an apparent exhibition of *tu quoque*, the Government also violated the Local Rules by filing an oversized reply brief without seeking leave of the Court (the same reply brief complaining of Crawford's failure to respond to the statement of material facts). <u>See</u> L.R. 7.1(b)(1) (providing that reply briefs "may not exceed [ten] pages"). The parties (and other

Court may deem admitted all the properly supported facts in the Government's statement of material facts. As discussed below, however, even when considering Crawford's response, the United States is still entitled to summary judgment.

### 2. *Independent Contractor Exception*

The FTCA excludes the acts of "any contractor with the United States" from the government's waiver of sovereign immunity. 28 U.S.C. § 2671; accord <u>United States v. Orleans</u>, 425 U.S. 807, 813–14 (1976); <u>see also</u> <u>Roditis v. United States</u>, 122 F.3d 108, 111–12 (2d Cir. 1997) (finding that the United States cannot be liable even for otherwise nondelegable state law duties when they are assigned to an independent contractor); <u>B&A Marine Co. v. Am. Foreign Shipping Co.</u>, 23 F.3d 709, 713 (2d Cir. 1994) ("[T]he FTCA explicitly excludes liability of the Government for the wrongful act or omission of an independent contractor."). Thus, if NYSARC is an independent contractor of the government, the United States cannot be held liable for its acts or omissions related to clearing ice and snow from the parking lot of the O'Brien Building.

"Whether a person is a government employee or an independent contractor is a question of federal law." <u>Leone v. United States</u>, 910 F.2d 46, 49 (2d Cir. 1990) (citing <u>Logue v. United States</u>, 412 U.S. 521, 528 (1973)); <u>accord</u> <u>Johnson v. United States</u>, No. 11-CV-1035, 2012 WL 2921542, at *3 (N.D.N.Y. July 17, 2012) (Kahn, J.); <u>see also</u> <u>B&A Marine</u>, 23 F.3d at 713 ("For purposes of the FTCA, the common law of torts and agency defines the distinction between an independent contractor (for whose torts the Government is not responsible) and an employee, servant or agent (for whose torts the Government is responsible)."). Under federal law, a person

---

readers) are reminded that the Local Rules are binding on attorneys practicing before this Court. <u>See</u> L.R. 1.1(d) ("Failure of an attorney or of a party to comply with any provision of these Rules . . . shall be a ground for imposition of sanctions.").

is a contractor and not an employee of the government if the government "lack[s] the authority 'to control the detailed physical performance of the contract,'" Leone, 910 F.2d at 49 (quoting Logue, 412 U.S. at 527), and courts should look to traditional "principles of agency" when determining whether a person is an independent contractor or employee for FTCA purposes, id. Under this strict control test, "the crucial factor in distinguishing a federal agency from an independent contractor is the United States' authority to control and supervise, on a day-to-day basis, the detailed physical performance of the contractor." Moody v. United States, 753 F. Supp. 1042, 1046 (N.D.N.Y. 1990).

None of the evidence submitted by Crawford shows that the Government was empowered to supervise the day-to-day detailed physical performance of NYSARC, and the facts not in genuine dispute entitle the United States to summary judgment. See Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012) ("The plaintiff bears the burden of proving subject matter jurisdiction [under the FTCA] . . . ." (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005))); cf. Celotex, 477 U.S. at 322 (holding that summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The Government's statement of material facts cites testimony of Reyes—an NYSARC employee—to show that GSA did not provide instructions on NYSARC's day-to-day conduct in removing ice and snow. U.S. SMF ¶ 63 (citing Ex. K. at 30–31). In that deposition, Reyes testified that aside from a general discussion approximately thirty years ago about where to dump removed snow, the GSA had no other discussions with him about how to remove snow from the parking lot. Ex. K at 28:2–30:21.

Crawford's response, pointing to the same deposition testimony of Reyes, fails to raise a genuine dispute as to this issue. Pl.'s SMF Resp. ¶ 63 (citing Ex. K. at 26–28, 30, 59–60). In the portion cited by Crawford, Reyes testified that while he or Mike Griswold (another NYSARC employee) would inspect the parking lot hourly and determine whether a subcontractor (WM Excavating) needed to be called to salt the entire parking lot, sometimes the security guard stationed in the lot would call GSA to report ice, which would be passed on to NYSARC. Ex. K at 26:3–27:14; see also id. at 59:16–60:14 (noting that the security guard, if he saw ice in the parking lot, would "call [the guard's] office," which would then call GSA, which would then call NYSARC, but that this happened rarely). Reyes also mentioned "a discussion with someone at GSA about snow removal . . . approximately 30 years ago" giving basic procedures about where removed snow should be dumped. Id. at 28:2–30:12. This procedure never changed, and Reyes testified that he had no other discussions with GSA about how to remove the snow. Id. at 30:13–21.

None of this suggests that GSA held "the authority 'to control the detailed physical performance of [NYSARC's] contract.'" Leone, 910 F.2d at 49 (quoting Logue, 412 U.S. at 527). The contract with NYSARC further confirms this understanding, stating that NYSARC "will determine how often the work is to be performed, how much labor is needed to perform the task, what methods will be used to complete the job and which supplies, materials and equipment are needed." Ex. L at 7; see also Korotkova v. United States, 990 F. Supp. 2d 324, 328 (E.D.N.Y. 2014) (noting that "[w]hether an entity is classified as a federal employee or an independent contractor is a matter of law" that can be "appropriately resolved by looking at the language of the contract between the Government and the contracting entity" (quoting Carter v. United

States, No. 96-CV-9139, 1998 WL 744009, at *2 (S.D.N.Y. Oct. 26, 1998))). Additionally, the other factors used for determining an independent contractor relationship, such as "the source of the instrumentalities and tools" and "the method of payment," among others, also show that NYSARC is an independent contractor. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751–52 (1989); see also, e.g., Ex. L at 7 (discussing the allocation of responsibility between the GSA and NYSARC).

Nor does the sole instruction concerning where to dump the snow represent control of the detailed physical performance of NYSARC's work.[6] For example, a contractor hired to build a house, given specific instructions as to the design of the house and the materials with which to build it, does not thereby become an employee or servant of the principal. See Hilton Int'l Co. v. NLRB, 690 F.2d 318, 320 (2d Cir. 1982) (stating that the common-law test turns not on whether the principal can instruct the contractor as to "the result to be accomplished," but whether it can direct "the 'manner and means' by which the purported employee brings about that result" (quoting Lorenz Schneider Co. v. NLRB, 517 F.2d 445, 451 (2d Cir. 1975))). As noted in Leone, "[t]he question is not whether a contractor must comply with . . . and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government." 910 F.2d at 50.

Crawford's citations to the deposition of Colleen Carey, Pl.'s Resp. SMF ¶¶ 51–52, 78, 81, 88 (citing Dkt. No. 63-17 ("Exhibit M") at 17–31, 55), similarly fail to show the level of

_____

[6] While the Government may be liable for instructing an independent contractor when the instruction itself is negligent and causes injury, see Sell v. U.S. Dep't of Justice, No. 07-CV-1205, 2008 WL 1766873, at *4 (E.D. Mo. Apr. 14, 2008) ("Logue also illustrates that the federal government, through the behavior of its employees, can be liable for damages occurring under an independent contractor's care, if caused by a government employee's instructions."), Crawford does not argue on the motion or allege in her Complaint that the instruction itself was a proximate cause of her fall.

control required to establish an agency relationship. In the portion cited, Carey testified that she occasionally "walk[ed] around the building" to perform "on-spot inspections," Ex. M. at 19:9–15, would "work together with the janitorial supervisor to ensure things are getting done properly" during a snowstorm, id. at 19:20–24, and that, if the guard in the parking lot "[saw] something that needs attention," he would contact a GSA employee through intermediaries, id. at 28:15–30:10; see also id. at 55:15–18 (discussing a call about putting down salt in the parking lot). Acting "generally as an overseer," however, is not enough to meet the strict control test and transform an independent contractor into a federal employee. Leone, 910 F.2d at 50. "[T]here is abundant case law supporting the proposition that the strict control test is not satisfied simply because the government retained the right to inspect the progress of [the contractor's] work . . . ." Moody, 753 F. Supp. at 1047. Also, occasional requests that NYSARC perform additional deicing does not constitute control over the detailed physical performance of the contract, which is required to transform NYSARC into an employee of the Government. E.g., Hilton, 690 F.2d at 320. Because the contract and deposition testimony show that NYSARC was an independent contractor, and Crawford has failed to proffer any evidence raising a genuine dispute as to this point, the United States is entitled to judgment as a matter of law.

### 3. Discretionary Function Exception

The FTCA bars federal liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). In further support of its motion for summary judgment, the Government argues that the United States' decision to delegate responsibility for clearing snow and ice to NYSARC cannot form the basis

for FTCA liability because the delegation of a task to and the subsequent supervision of an independent contractor is a discretionary function. U.S. Mem. at 20–24. The Court agrees.

"[T]he United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of contractors is a discretionary function . . . ." Shivcharan v. United States, No. 04-CV-1296, 2005 WL 408046, at *2 (E.D.N.Y. Feb. 15, 2005); see also Yesina v. United States, 911 F. Supp. 2d 217, 222 (E.D.N.Y. 2012) (finding that "the decision to supervise [the contractor] and periodically inspect the premises" was subject to the discretionary function exception and could not form the basis for liability). "The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception." Williams v. United States, 50 F.3d 299, 310 (4th Cir. 1995). Even more specifically, "it is well established that the United States' decision to contract with independent companies to ensure maintenance of premises is a discretionary function, insulated from liability." Moreno v. United States, 965 F. Supp. 521, 526 (S.D.N.Y. 1997) (citing Williams, 50 F.3d at 310).

In her brief, Crawford instead argues that the Government's negligence comes from its "decision making process" concerning "the method of snow removal and the failure to employ de-icing procedures," which Crawford describes as "the negligence of an employee or employees of the United States in the performance of a function that is normally [performed] by a private citizen" and thus that it is not subject to the discretionary function exception. U.S. Opp'n at 11. This argument ignores the Government's delegation of this function to NYSARC as its

independent contractor, and instead seems to argue that the United States failed to perform a nondelegable duty. But "courts have consistently held that non-delegable duties may not be used as a means to impose liability on the Government under the FTCA." <u>Moreno</u>, 965 F. Supp. at 526; <u>accord</u> <u>Roditis</u>, 122 F.3d at 111–12.

The United States' decision to hire NYSARC to clear ice and snow from the O'Brien Building (as well as its subsequent supervision) is subject to the FTCA's discretionary function exception, and the United States cannot be held liable for the subsequent actions of NYSARC due to the independent contractor exception. Accordingly, the Government is entitled to judgment as a matter of law.

### B. NYSARC's Motion

#### 1. Timeliness of the Motion

As discussed above, NYSARC's motion for summary judgment—styled as a "cross motion"—was filed on the opposition deadline for the Government's motion, over three weeks after the deadline to file dispositive motions. NYSARC Mot.; Jan. 15, 2016 Minute Entry. Rule 56(b) of the Federal Rules of Civil Procedure provides that the Court may set the deadline for filing summary judgment motions, as does Local Rule 16.1. <u>See</u> L.R. 16.1(f) ("The Court shall strictly enforce any deadlines that it establishes in any case management order . . . ."); <u>see also</u> Fed. R. Civ. P. 16(b)(3)(A) (providing that the district court must issue a scheduling order limiting the time to file motions).

In this case, NYSARC's failure to timely file is "a proper basis for denying [its] summary judgment motion." <u>Kinberg v. Colorforms</u>, No. 89-CV-1156, 1991 WL 285621, at *4 (S.D.N.Y. Dec. 31, 1991); <u>accord, e.g.</u>, <u>Dedge v. Kendrick</u>, 849 F.2d 1398, 1398 (11th Cir. 1988) (per

curiam); <u>CPALead, LLC v. Adeptive Ads LLC</u>, No. 14-CV-1449, 2016 WL 4941991, at *1–2

(D. Nev. Sept. 14, 2016); <u>Brown v. Kia Motors Corp.</u>, No. 06-CV-804, 2009 WL 5178733, at *1

(W.D. Pa. Dec. 21, 2009); <u>Julian v. Equifax Check Servs., Inc.</u>, 178 F.R.D. 10, 12–16 (D. Conn.

1998). The motion was not a cross motion, which the Local Rules define as "a *competing* request

for relief or order similar to that requested by another party *against the cross-moving party*." L.R.

7.1(c) (emphasis added); <u>see also</u> <u>id.</u> ("If a party makes a cross-motion, it must join its cross

motion brief with its opposition brief . . . ."). Instead, this was an independent dispositive motion,

filed against Crawford in parallel to the Government's motion (not in competition with it).

Accordingly, the dispositive motion deadline applied. NYSARC also has made no attempt to

show good cause for its belated filing. Because NYSARC failed to file its motion by the deadline

set by Judge Hummel, its motion for summary judgment is denied.

### 2. Merits

Even if the Court were to reach the merits of NYSARC's motion, it would still be denied

because it has failed to show the absence of a genuine dispute and NYSARC is not entitled to

judgment as a matter of law. NYSARC makes three arguments in support of its motion, which

are discussed in turn below.

First, in an ontological twist, NYSARC argues that there never was any ice that Crawford

slipped on, that it was impossible for there to have been any ice, and thus that Crawford's claim

of having slipped on ice is pure fiction. NYSARC Mem. at 2–3. In support of this point,

NYSARC relies on the affidavit of its purported meteorological expert, Howard Altschule, in

which Altschule claims that because of the sky conditions, precipitation, and temperature on the

days preceding and the day of the accident, "no snow or ice was present on unexposed, untreated, and undisturbed surfaces." Dkt. No. 69-1 ("Altschule Affidavit") ¶¶ 6–14.[7]

This fact is clearly disputed. Crawford provided an affidavit of her own purported expert, which expresses that snow from earlier precipitation likely melted, flowed into the lot, and refroze, forming the ice that Crawford slipped on. Dkt. No. 77-1 ("Gailor Affidavit") ¶¶ 7–12. Crawford's own affidavit also disputes NYSARC's theory. See Dkt. No. 77-2 ("Crawford Affidavit") ¶ 4 ("When I was on the ground I realized that I was lying in ice that had frozen on the surface of the parking lot."). The Court's role on summary judgment is to identify genuine issues of fact, not to decide them. Gallo, 22 F.3d at 1224. Because the existence of snow and ice in the parking lot is a disputed issue of fact, NYSARC's motion for summary judgment on this ground must be denied.

Second, NYSARC argues that it "undertook reasonable and diligent care in its snow removal efforts," and thus that it cannot be held liable for Crawford's fall. NYSARC Mem. at 3–5. The sole case cited in this section of NYSARC's brief shows that it is not entitled to summary judgment: "The very question of whether the defendant's conduct amounts to 'negligence' is inherently a question for the fact-trier in all but the most egregious instances." Cartin v. United States, 853 F. Supp. 63, 65 (N.D.N.Y. 1994). Also, the facts in Cartin (in which the court in fact denied summary judgment as well) differ from the instant case, as the issue in

_____

[7] While Crawford failed to file a response to NYSARC's statement of material facts, the Court—in light of NYSARC's own procedural failures—will look to other record evidence in assessing the merits of NYSARC's motion. It is worth noting, and is an additional independent ground for denying the motion as to this point, that NYSARC failed to include any facts concerning its meteorological theories in its statement of material facts. NYSARC SMF; cf. id. ¶¶ 24–25 (noting Crawford's testimony concerning the existence of black ice and a snowbank).

that case concerned the decision to voluntarily clear snow from the municipality's sidewalk and adjoining areas (as opposed to premises liability). Id. at 64–65. Under New York law, a defendant may be found liable for a hazardous condition of snow or ice on its own premises provided that "it had actual or constructive notice of the hazardous condition and that a sufficient period of time elapsed since the cessation of precipitation to permit the party to remedy the condition." Lattimore v. First Mineola Co., 874 N.Y.S.2d 253, 255 (App. Div. 2009) (quoting Lee-Pack v. 1 Beach 105 Assocs., LLC, 814 N.Y.S.2d 275, 276 (App. Div. 2006)). NYSARC provided no evidence as to these points, and its recitation of its employees' general snow removal practices, NYSARC Mem. at 4–5, is insufficient to show that they were not negligent in this particular case (a question ordinarily left to the jury). This portion of NYSARC's motion must be denied.

Finally, NYSARC claims that it is entitled to summary judgment because Crawford's own "inattention and negligence were the sole proximate cause[s] of her injuries." NYSARC Mem. at 6–7. New York is a pure comparative negligence state, meaning that the culpable conduct of a plaintiff is an affirmative defense that, if proved, serves to reduce the plaintiff's recovery in proportion to her share of fault. N.Y. C.P.L.R. 1411, 1412; see also Knieriemen v. Bache Halsey Stuart Shields Inc., 427 N.Y.S.2d 10, 14 (App. Div. 1980) (discussing New York's comparative negligence scheme); Shanahan v. Orenstein, 383 N.Y.S.2d 327, 330–31 (App. Div. 1976) (describing New York's system as "pure comparative negligence"). As mentioned, however, NYSARC argues not that Crawford merely contributed to the accident, but that her "inattention and negligence were the sole proximate cause of her injuries," meaning by extension that NYSARC's conduct was not a proximate cause of the fall. NYSARC Mem. at 6–7; see also

79 N.Y. Jur. 2d <u>Negligence</u> § 116 (2016) ("New York adopted a 'pure' comparative negligence system which allows a plaintiff whose concurrent or contributory negligence is not the sole proximate cause of the plaintiff's injury to recover . . . .").

NYSARC's argument confuses the meaning of proximate cause. To establish proximate cause, a plaintiff must simply show that "the defendant's negligence was a substantial cause of the events which produced the injury." <u>Derdiarian v. Felix Contracting Corp.</u>, 414 N.E.2d 666, 670 (N.Y. 1980). When ice is allowed to accumulate on premises and results in a slip and fall, the question of whether the failure to clear the ice is a proximate cause of the fall is left to the jury in all but the clearest cases. <u>See</u> <u>id.</u> at 668 ("As a general rule,  the question of proximate cause is to be decided by the finder of fact . . . ."); <u>MacKenzie v. City of New York</u>, 4 N.Y.S.3d 110, 112 (App. Div. 2015) (affirming denial of summary judgment in a slip and fall case due to the "existence of triable issues of fact as to whether [the third-party defendant's] failure to clear his sidewalk of snow and ice was a proximate cause of the" fall, because "the question whether a reasonable prudent person should have anticipate the consequences which followed [such failure] is a question to be determined by a jury" (alteration in original) (quoting <u>Morris v. Nacmias</u>, 666 N.Y.S.2d 202, 203 (App. Div. 1997))); <u>Pfeffer v. City of New York</u>, 270 N.Y.S.2d 564, 564–65 (App. Div. 1966) (reversing the trial court's judgment for the defendant because there were triable issues of fact as to the opportunity to remove the ice and the proximate cause of the fall). This is because an invitee's slip on ice left in a parking lot is spatially related to and foreseeable from the failure to properly treat or clear the ice, and public policy interests suggest that landholders should keep their property in a reasonably safe condition for guests. <u>See</u> <u>Pagan v. Goldberger</u>, 382 N.Y.S.2d 549, 550–52 (App. Div. 1976) (discussing the test for proximate

cause). Even if Crawford was careless and negligent in her attention and footwear, this only presents a question of fact for the jury as to the relative degrees of her and NYSARC's fault. It does not remove legal causation from NYSARC's failure to clear the ice. Accordingly, NYSARC's motion for summary judgment is denied.

## C. Supplemental Jurisdiction

The only basis for subject matter jurisdiction asserted in the Complaint is the presence of a federal defendant in this case. Compl. ¶ 1; see 28 U.S.C. § 1346(b)(1) (providing district courts jurisdiction to hear claims for money damages against the United States). Because the Court is granting the United States' motion for summary judgment, the Court may—but need not—decline supplemental jurisdiction over Crawford's state law claims against NYSARC. See 28 U.S.C. § 1367(c)(3) (permitting district courts to decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction"). The decision whether to continue exercising supplemental jurisdiction is subject to the district court's discretion. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise [supplemental] jurisdiction . . . ." (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966)); Mauro v. S. New England Telecom., Inc., 208 F.3d 384, 388 (2d Cir. 2000) (noting that the courts of appeals "review a district court's exercise of supplemental jurisdiction for abuse of discretion," and finding such jurisdiction proper in that case).

In this matter, considerable time, effort, and resources have been expended to reach the present stage of litigation—both by the parties and by the Court. Sending a trial-ready case in

which discovery has concluded to state court seems contrary to the guidance of the Supreme Court and may result in a considerable loss of judicial economy, convenience, and fairness. Carnegie-Mellon, 484 U.S. at 350; see also Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 102 (2d Cir. 2014) (noting the extended length of litigation, conclusion of discovery, submission of dispositive motions, and readiness for trial as reasons supporting the continued exercise of supplemental jurisdiction). Therefore, the Court will retain supplemental jurisdiction over Crawford's claims against NYSARC.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the U.S. Motion (Dkt. No. 63) is **GRANTED**; and it is further

**ORDERED**, that the United States is terminated as a defendant in this case; and it is further

**ORDERED**, that the NYSARC Motion (Dkt. No. 69) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      December 12, 2016
                  Albany, New York

Lawrence E. Kahn
U.S. District Judge